[Cite as *In re B.C.*, 2023-Ohio-4842.]

COURT OF APPEALS
FAIRFIELD COUNTY, OHIO
FIFTH APPELLATE DISTRICT

IN THE MATTER OF:


     B.C.

JUDGES:
Hon. W. Scott Gwin, P.J.
Hon. John W. Wise, J.
Hon. Andrew J. King, J.

Case No. 2023-CA-00022

O P I N I O N


CHARACTER OF PROCEEDING:       Appeal from the Court of Common Pleas,
Juvenile Division, Case No 2022-AB-0067


JUDGMENT:       Affirmed


DATE OF JUDGMENT ENTRY:       December 29, 2023


APPEARANCES:

For Appellee FCCPS

R. KYLE WITT
PROSECUTING ATTORNEY
GENYLYNN COSGROVE
ASSISTANT PROSECUTOR
239 West Main Street
Suite 101
Lancaster, Ohio 43130

For Appellant Father

JAMES S. SWEENEY
JAMES SWEENEY LAW, LLC
285 South Liberty Street
Powell, Ohio 43065

For Guardian ad Litem

BRIAN HERZBERGER
2770 East Main Street, Suite 25
Columbus, Ohio 43209

*Wise, J.*

**{¶1}** Appellant-Father M.K. appeals the decision of the Fairfield County Court of Common Pleas, Juvenile Division, which granted permanent custody of his minor child to Fairfield County Department of Job and Family Services.

### STATEMENT OF THE FACTS AND CASE

**{¶2}** The relevant facts leading to this appeal are as follows:

**{¶3}** Appellant-Father M.K. and Mother J.C. are the biological parents of minor child B.C. (DOB 4/9/2015).

**{¶4}** On April 21, 2022, Fairfield County Protective Services (Agency) was granted temporary shelter custody of the minor child B.C. through a private filing in Fairfield County Domestic Relations Court, and the case was transferred to Fairfield County Juvenile Court.

**{¶5}** On August 17, 2022, an agreed adjudicatory and dispositional hearing was held wherein B.C. was found to be a Dependent Minor and was placed in the Temporary Custody of the Agency.

**{¶6}** On October 10, 2022, a case review was held by the trial court regarding B.C. Appellant-Father did not attend.

**{¶7}** On December 15, 2022, a case review was held by the trial court. Appellant-Father did not attend.

**{¶8}** On April 18, 2023, a case review was held by the trial court. Appellant-Father did not attend.

**{¶9}** On April 18, 2023, the temporary custody of the minor child was extended.

**{¶10}** On March 21, 2023, FCCPS filed a motion requesting that the temporary custody of B.C. be amended to an Order of Permanent Custody.

**{¶11}** On April 18, 2023, a pre-trial on the Motion for Permanent Custody was held. Appellant-Father did not attend.

**{¶12}** On April 26, 2023, the oral hearing on the Motion for Permanent Custody was held and neither parent was present. Both parents had active warrants for their arrest.

**{¶13}** Present at the hearing was Genylynn Cosgrove, Assistant Prosecuting Attorney; Morgan Furness, Case Worker for FCCPS; Tom Gordon, Attorney for Mother; Cedric Collins, Attorney for Father; Brian Herzberger, Guardian ad Litem; Sarah Rahter, Attorney for B.C.

**{¶14}** At the hearing, the trial court heard testimony from the Caseworker Morgan Furness.

**{¶15}** Caseworker Morgan Furness testified as to the Agency's concerns for Appellant-Father at the time of initial involvement, which included repeated arrests for domestic violence and unstable housing. The Agency developed a case plan and made efforts to assist Appellant-Father to remedy the problems that caused the child to be removed from the home.

**{¶16}** As part of his case plan, Fairfield County Child Protective Services wanted Appellant-Father to follow probation rules and protection orders, comply with AOD assessment and follow recommendations, call and screen, complete batterers intervention, have parenting time, and provide for the child's needs. As to the probation rules and protection orders, Appellant-Father was released and encouraged to attend batterers treatment.

{¶17} In August, 2022, Appellant-Father was discharged from Afrocentric batterers intervention program for nonattendance. In October, 2022, he was enrolled in Stop Inc. but did not complete the program. In March, 2023, Father was referred to Natasha's House and missed many appointments. Caseworker Furness explained that Appellant-Father would not be able to complete that referral until his warrant is taken care of.

{¶18} The Agency indicated that Appellant-Father has violated his protection orders, has been re-incarcerated for violations, and has ongoing charges which resulted in the current outstanding warrant.

{¶19} As to the AOD assessment, Appellant-Father did comply with this aspect of the case plan. Father was inconsistent with his visitation/parenting time and did not comply with this part of his case plan. As to the needs of the minor child, Appellant-Father did not obtain/maintain appropriate housing and has an active warrant out for his arrest. Appellant-Father was not compliant with this part of the case plan.

{¶20} As to the minor child's Mother, at the time of initial involvement the Agency's concerns included substance abuse. The Agency developed a case plan and extended efforts to assist Mother to remedy the problems which caused the minor child to be removed from the home. Mother agreed with the case plan and thought it was reasonable when it was created.

{¶21} As part of her case plan, Mother was to call and screen as it related to her sobriety. Mother started with the Lighthouse after her release from jail on August, 2022, and she addressed her mental health while in Lighthouse. On February 22, 2023, Mother tested positive for fentanyl while with Lighthouse. She was offered in-patient treatment by

Lighthouse, but declined and was then referred to a shelter. At the time of the permanent custody hearing, she had an active warrant out for her arrest and was on probation. Her current whereabouts were unknown.

**{¶22}** Mother was also to attend court hearings. Mother did attend hearings virtually while at Lighthouse, but has since failed to have contact with FCCPS and did not communicate with her attorney or appear at the permanent custody hearing.

**{¶23}** Mother was also to participate in parenting time. Mother did participate in parenting time until February, 2023, although she was inconsistent, often cancelling, arriving late or leaving early. Mother has had no contact with child since February, 2023.

**{¶24}** Mother was also to provide for B.C.'s needs as part of her case plan. Mother does not have a job, housing, and is unsafe due to substance abuse, as she is currently missing with a warrant out for her arrest.

**{¶25}** Following the presentation of all evidence and testimony to the court, Counsel for B.C. and counsel for Appellant-Father questioned the Guardian ad Litem as to his report.

**{¶26}** The Guardian ad Litem stated that his opinion had not changed with regard to his final written report, and that he still supported the granting of permanent custody of B.C. to Fairfield County Child Protective Services.

**{¶27}** The trial court found that neither Appellant-Father or Mother have substantially completed their case plan services to remedy the Agency's initial concerns which led to the minor child's removal from the home despite reasonable case planning and diligent efforts by Fairfield County Protective Services.

**{¶28}** The trial court found, *inter alia*, that Mother was convicted of Possession of Drugs and Drug Paraphernalia on May 29, 2019, and was convicted of Possession of Fentanyl on September 13, 2022. Appellant-Father was convicted of Unlawful Restraint on May 21, 2021. Both Mother and Appellant-Father currently had active warrants for their arrest. On the date of the permanent custody hearing, Mother's whereabouts were unknown. Appellant-Father had a warrant and failed to appear in court.

**{¶29}** By Judgment Entry filed May 1, 2023, the trial court terminated the parental rights of Appellant-Father and Mother and granted permanent custody of B.C. to Fairfield County Department of Job and Family Services.

**{¶30}** Appellant now appeals, raising the following Assignment of Error:

**<u>ASSIGNMENT OF ERROR</u>**

**{¶31}** "I.   THE JUVENILE COURT ERRED IN TERMINATING FATHER'S PARENTAL RIGHTS AND GRANTING PERMANENT CUSTODY OF B.C. TO FCCPS."

**I.**

**{¶32}** In his sole assignment of error, Appellant-Father argues that the trial court's decision to grant permanent custody of B.C. to the Agency was error.  We disagree.

**{¶33}**  A trial court's decision to grant permanent custody of a child must be supported by clear and convincing evidence. The Ohio Supreme Court has defined "clear and convincing evidence" as "[t]he measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty, as required beyond a reasonable doubt, as in criminal cases."

*Cross v. Ledford,* 161 Ohio St. 469, 120 N.E.2d 118 (1954); *In re: Adoption of Holcomb,* 18 Ohio St.3d 361, 481 N.E.2d 613 (1985).

**{¶34}** In reviewing whether the trial court based its decision upon clear and convincing evidence, "a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." *State v. Schiebel,* 55 Ohio St.3d 71, 74, 564 N.E.2d 54, 60 (1990); *See also*, *C.E. Morris Co. v. Foley Constr. Co.,* 54 Ohio St.2d 279, 376 N.E.2d 578 (1978). If the trial court's judgment is "supported by some competent, credible evidence going to all the essential elements of the case," a reviewing court may not reverse that judgment. *Schiebel,* 55 Ohio St.3d at 74, 564 N.E.2d 54.

**{¶35}** Moreover, "an appellate court should not substitute its judgment for that of the trial court when there exists competent and credible evidence supporting the findings of fact and conclusion of law." *Id.* Issues relating to the credibility of witnesses and the weight to be given the evidence are primarily for the trier of fact. As the court explained in *Seasons Coal Co. v. Cleveland,* 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984), "The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony."

**{¶36}** Further, deferring to the trial court on matters of credibility is "crucial in a child custody case, where there may be much evident in the parties' demeanor and attitude that does not translate to the record well." *Davis v. Flickinger,* 77 Ohio St.3d 415, 419, 674 N.E.2d 1159 (1997); *see, also*, *In re: Christian,* 4th Dist. Athens App. No.

04CA10, 2004–Ohio–3146; *In re: C. W.,* 2nd Dist. Montgomery App. No. 20140, 2004–Ohio–2040.

**{¶37}** Pursuant to R.C. §2151.414(B), the court may grant permanent custody of a child to the movant if the court determines "that it is in the best interest of the child to grant permanent custody to the agency that filed the motion for permanent custody and that any of the following apply:

(a) The child is not abandoned or orphaned, has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period if, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.

(b) The child is abandoned.

(c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.

(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has

been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state.

(e) The child or another child in the custody of the parent or parents from whose custody the child has been removed has been adjudicated an abused, neglected, or dependent child on three separate occasions by any court in this state or another state.

{¶38} Revised Code §2151.414(E) sets forth the factors a trial court must consider in determining whether a child cannot or should not be placed with a parent within a reasonable time. If the court finds, by clear and convincing evidence, the existence of any one of the following factors, "the court shall enter a finding that the child cannot be placed with [the] parent within a reasonable time or should not be placed with either parent":

(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to

the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.

*** 

(4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child;

***

(12) The parent is incarcerated at the time of the filing of the motion for permanent custody or the dispositional hearing of the child and will not be available to care for the child for at least eighteen months after the filing of the motion for permanent custody or the dispositional hearing.

(13) The parent is repeatedly incarcerated, and the repeated incarceration prevents the parent from providing care for the child.

(14) The parent for any reason is unwilling to provide food, clothing, shelter, and other basic necessities for the child or to prevent the child from suffering physical, emotional, or sexual abuse or physical, emotional, or mental neglect.

***

(16) Any other factor the court considers relevant.

**{¶39}** Upon review, the trial court's finding that B.C. could not be placed with Appellant-Father within a reasonable period of time was not against the manifest weight or sufficiency of the evidence. In concluding that the child cannot or should not be placed

with Appellant within a reasonable period of time, there was enough evidence for the trial court to rely upon R.C. §2151.414(E)(1). Caseworker Furness testified that Appellant-Father would not allow them access to his housing to permit them to make a determination as to safety and appropriateness. (T. at 32). Appellant-Father was in and out of jail throughout the pendency of this matter and was therefore unable to provide a safe, permanent home for the child. (T. at 30, 32). Appellant-Father demonstrated a lack of commitment by failing to provide financial support or a permanent home. (T. at 32). Appellant-Father was not financial stable. *Id.* Appellant-Father failed to appear at the permanent custody hearing or any of the review hearings. Appellant-Father failed to attend the last two scheduled visitations with B.C. The Agency also expressed concerns regarding Appellant-Father's history of domestic violence and active arrest warrant. (T. at 39).

**{¶40}** Appellant did not complete his case plan or reduce the risks that led to the involvement of the Agency in this case.

*Best Interest*

**{¶41}** Evidence was presented that B.C. has been in the custody of FCCPS since April 21, 2022. She was placed in the Snider foster home from 4/21/2022 until 11/4/2022. B.C. was then placed in the family kinship placement of Father's sister M.K. from 11/4/2022 until 2/22/2023, at which time M.K. advised FCCPS that she could no longer care for the child. When that placement did not work out, B.C. asked to go back to the Snider foster home.

**{¶42}** B.C. is bonded with her foster parents and all her needs are being met. She has been able to do programs such as gymnastics and is bonded with brother E.C., who

is placed in the foster home with her, who she previously did not have much contact with. Their bond has been deepening in foster care along with their relationships with the foster parents own children.

**{¶43}** As to B.C. parents, the trial court found:

B.C. needs a safe and stable environment where her needs are met on a consistent basis. B.C. cannot find legally secure permanent placement with Mother at this time as she has failed to follow through with treatment recommendations for AOD issues, has been incarcerated, has used illegal substances recently, has failed to secure stable housing and employment. Mother has a warrant out for her arrest and her location is unknown.

B.C. cannot find legally secure permanent placement with Father at this time because he has been in and out of jail and currently has an active warrant out for his arrest. B.C. has lived with her Father during which there was domestic violence occurring in his home.

**{¶44}**  (May 1, 2023, Judgment Entry at 12)

**{¶45}** Appellant-Father's GPS has violated protection orders, failed to address his domestic violence issues through batterers' treatment, and failed to allow FCCPS to view his housing. Appellant-Father also has an active warrant on domestic violence matters which will result in his incarceration. Appellant-Father has failed to visit B.C. consistently throughout the case. B.C. needs a safe and stable environment where her needs are met on a consistent basis. Mother and Father at this time provide absolutely no stability for the child and cannot provide for any of the child's needs, as Mother also has an active arrest warrant and her location is unknown.

**{¶46}** For the aforementioned reasons, there was more than enough evidence for the trial court to conclude that B.C. could not and should not be replaced with Appellant-Father within a reasonable amount of time.

**{¶47}** Appellant-Father's sole Assignment of Error is overruled.

**{¶48}** For the foregoing reasons, the judgment of the Court of Common Pleas, Juvenile Division, Fairfield County, Ohio, is hereby affirmed.

By: Wise, J.

Gwin, P. J., and

King, J., concur.

JWW/kw 1222